

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HERMINE BYFIELD <br><br> Plaintiff(s) <br><br> v. <br><br> HEALTHCARE REVENUE RECOVERY GROUP, LLC; and DOES 1 through 10, inclusive, <br><br> Defendant(s) | **18   243** <br><br> Civil Action No. <br><br> Jury Trial Demanded |

Plaintiff Hermine Byfield (hereinafter "Plaintiff"), on behalf of herself and others similarly situated, alleges as follows:

## I.    INTRODUCTION

1.    This is an action for damages brought by a consumer pursuant to the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692 et seq.

2.    In effectuating the FDCPA, Congress sought to limit the tactics a debt collector could use. Despite these plain truths, Defendant (defined herein) used inappropriate tactics to collect Plaintiff's debt.

3.    Upon information and belief, Defendant used these very same tactics across the Commonwealth of Pennsylvania against hundreds, if not thousands, of individuals who, fall within the ambit of the protections of the FDCPA.

4.    Absent this action, Defendant's inappropriate tactics would continue unabated.

## II.    THE PARTIES

5.    Plaintiff is an adult individual citizen of the Commonwealth of Pennsylvania. Plaintiff resides in Philadelphia County.

1

6.     Plaintiff is a "consumer," as that term is defined and/or contemplated within the scope of FDCPA.

7.     Defendant Healthcare Revenue Recovery Group, LLC (hereinafter "Defendant") is a commercial entity that regularly conducts business in the Eastern District of Pennsylvania, is engaged in the business of debt collection within the Commonwealth of Pennsylvania, and may be served at P.O. Box 459080 Sunrise, FL 33345-9080.

8.     Indeed, on its own website, Defendant states that "[w]e're proud to say we've been        in        the        collections        business        since        1996."        See https://www.healthcarerevenuerecoverygroup.com/about-hrrg/, last visited on January 15, 2018.

9.     Plaintiff is unaware of the names and capacities of those defendants sued as DOES 1 through 10, but will seek leave to amend this complaint once their identities become known to Plaintiff.  Upon information and belief, Plaintiff alleges that at all relevant times each defendant, including the DOE defendants 1 through 10, was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants, and in engaging in the conduct alleged herein was in the course and scope of and in furtherance of such relationship.

10.     Unless otherwise specified, Plaintiff will refer to all defendants collectively as "Defendant" and each allegation pertains to each Defendant.

11.     Defendant is a "debt collector," as that term is defined and/or contemplated within the scope of FDCPA.

12.     Defendant uses instrumentalities of interstate commerce and mail in a business, whose principal purpose is collection of debts and/or regularly collects (or attempts to collect), directly or indirectly, debts owed or due or asserted to be owed or due another.

2

13. At all times material hereto, Defendant acted and/or failed to act in person and/or through duly authorized agents, servants, workmen, and/or employees, acting within the scope and course of their authority and/or employment for and/or on behalf of Defendant.

## III. JURISDICTION AND VENUE

14. This Honorable Court has jurisdiction pursuant to 15 U.S.C. § 1692k and 28 U.S.C. § 1337.

15. The Eastern District of Pennsylvania is the proper venue for this litigation, because:

      a.    Plaintiff is a resident of the Eastern District of Pennsylvania and Defendant's wrongful conduct was directed to and was undertaken within the territory of the Eastern District of Pennsylvania; and

      b.    Defendant conducts a substantial portion of its business in the Eastern District of Pennsylvania.

## IV. STATEMENT OF CLAIMS

### A. BACKGROUND

16. On November 2, 2015, while a passenger in an automobile, Plaintiff was involved in a motor vehicle accident that caused Plaintiff to suffer from various physical injuries.

17. Although Plaintiff's injuries were not life-threatening, immediately after the accident, Plaintiff went to Nazareth Hospital (hereinafter "Provider") for evaluation and treatment.

18. On or about August 3, 2017, Defendant sent a letter to Plaintiff, written on behalf of the Provider, regarding Plaintiff's alleged obligation to pay the Provider for the above-referenced evaluation and treatment. A true and correct copy of this document (redacted for

3

purposes of privacy) is marked and attached hereto as Exhibit "A."

19.     At the time of Defendant's correspondence, the alleged obligation was in default.

20.     Defendant's correspondence explicitly identifies $900.00 as the "Amt Owed." See Exhibit "A."

21.     Accordingly, Defendant's correspondence explicitly stated and/or otherwise implied that Plaintiff owed the "Amt Owed" and that Defendant was entitled to collect that amount from Plaintiff. See Exhibit "A."

22.     Indeed, by sending the correspondence at issue, Defendant sought to collect the "Amt Owed" from Plaintiff.   The correspondence was, in effect, a request for payment to Plaintiff.

23.     In the Commonwealth of Pennsylvania, the extent of liability for the cost of treatment received for an injury incurred in a motor vehicle accident is limited by the cost containment provisions of the Motor Vehicle Financial Responsibility Law (hereinafter "MVFRL"), 75 Pa.C.S. § 1701 et seq.

24.     The specific provision of the MVFRL, in relevant part, declares:

> [a] person or institution providing treatment, accommodations, products or services to an injured person for an injury covered by liability or uninsured and underinsured benefits or first party medical benefits . . . **shall not require, request or accept payment** for the treatment, accommodation, products or services in excess of 110% of the prevailing charge at the 75th percentile; 110% of the applicable fee schedule, the recommended fee or the inflation index charge; or 110% of the diagnostic-related groups (DRG) payment; whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services at the time the services were rendered, or the provider's usual and customary charge, whichever is less.

75 Pa.C.S. § 1797(a)(emphasis supplied).

25.     This cost containment provision, commonly known as the "Act 6 Reduction," has been interpreted to mean that, "if Medicare makes any payment for a particular service, then reimbursement for purposes of automobile insurance will be limited to 110% of that amount." Hospital Association of Pennsylvania, Inc. v. Foster, 629 A.2d 1055, 1057-8 (Pa. Cmwlth. 1993); see also Pittsburgh Neurosurgery Associates, Inc. v. Danner, 733 A.2d 1279 (Pa. Super. 1999).

26.     Here, the alleged "Amt Owed" that Defendant sought to collect – $900.00 – is the total outstanding balance claimed by the Provider, without application of the Act 6 Reduction.

27.     In fact, neither the Provider nor the Defendant even attempted to re-calculate the "Amt Owed" to determine what the Provider may ask for or receive under the MVFRL.

28.     Indeed, the actual amount that the Provider is entitled to under the MVFRL is significantly less than the "Amt Owed" stated in Defendant's correspondence.

29.     The MVRFL explicitly forbids Provider and, correspondingly, anyone acting on Provider's behalf, to "require, request or accept payment" of more than the statute allows.  75 Pa.C.S. § 1797(a).

30.     Section 1692f(1) of the FDCPA specifically prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692(f)(1).

31.     As described herein, Defendant's actions violated the applicable provisions of the FDCPA, in that, Defendant explicitly claimed that Plaintiff owed an amount that was in excess of what its client – the Provider – was permitted by law to collect (or even ask for) under the MVFRL.

5

32.    Indeed, Defendant regularly sends letters to individuals within the Commonwealth of Pennsylvania that seek payment of a balance without the Act 6 Reduction being applied.

33.    Upon information and belief, Defendant has no procedures in place that are designed to avoid collecting more than what is permitted under the MVFRL.

34.    Further, upon information and belief, Defendant has never attempted to apply the Act 6 Reduction to any balances it has sought to collect from Pennsylvania consumers.

35.    Defendant's conduct, as alleged herein, is (and was) deliberate, intentional, reckless, willful, and wanton.

36.    Defendant's conduct, as alleged herein, is unfair, misleading, deceptive, and unconscionable.

37.    Plaintiff and the members of the Class have been (and will continue to be) financially damaged due to Defendant's conduct, as set forth herein.

38.    Plaintiff and the members of the Class have suffered and will continue to suffer actual damages due to Defendants' conduct, as set forth herein.

39.    Plaintiff avers that Defendant's conduct, as described herein, was not limited to the circumstances described herein, but was, and is, habitual, systematic, ongoing, and unrelenting in Defendant's business model and practice.

40.    Plaintiff avers that the purpose of Defendant's behavior described herein (as well as their day-to-day business operation), is to deceive unsuspecting consumers, wherever and whenever possible, to achieve, *inter alia*, the objectives of obtaining additional revenue and profit for Defendant's business enterprise.

41.    Plaintiff avers that Defendant has utilized various methods calculated to confuse,

6

mislead, distract, coerce, and convert consumers' funds for Defendant's benefit, by employing unethical business practices to secure pure financial gain and unjust financial enrichment.

42.　　Plaintiff further states that Defendant's practices continue unabated, and will continue well beyond the end of this case, for which Defendants have and/or will reap hundreds of thousands of dollars in unearned ill-gotten gains from unsuspecting consumers.

43.　　Irrespective of Plaintiff's and the Class members' actions, the aforementioned correspondence sent by Defendant to Plaintiff and members of the Class was false, misleading, and, at a minimum, in violation of the FDCPA.

## CLASS ACTION ALLEGATIONS

44.　　Plaintiff brings this action on behalf of herself and a class of similarly-situated individuals pursuant to Fed. R. Civ. P. 23.

45.　　Plaintiff brings this action as a class action for Defendant's violations of the FDCPA on behalf of the following class of individuals:　All natural persons in the City of Philadelphia, who were sent a letter, substantially in the form represented by Exhibit "A" (the "Class"), concerning a debt incurred following a motor vehicle accident, where no Act 6 Reduction was applied, during the statutory period covered by this Complaint.

46.　　The number of individuals in the Class is so numerous that joinder of all members is impracticable.　The exact number of members of the Class can be determined by reviewing Defendant's records.　Plaintiff is informed and believes and thereon alleges that there are over a hundred individuals in the defined Class.

47.　　Plaintiff will fairly and adequately protect the interests of the Class and have retained counsel that is experienced and competent in class action and FDCPA litigation.　See, e.g., Magness v. Bank of America, N.A., et al., Docket No. 12-cv-6586 (Davis, J.)(final approval

7

granted); <u>Volyansky v. Hayt, Hayt & Landau, LLC</u>, Docket No. 2:13-cv-03360 (McHugh, J.)(final approval granted); <u>Ebner v. United Recovery Systems, LP, et al.</u>, Docket No. 14-cv-06881 (Beetlestone, J.)(final approval granted).

48.     Plaintiff has no interests that are contrary to, or in conflict with, members of the Class.

49.     A class action suit, such as the instant one, is superior to other available means for fair and efficient adjudication of this lawsuit.  The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

50.     A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, members of the Class likely will not obtain redress of their injuries, and Defendant will retain the proceeds of its violations of the FDCPA.

51.     Furthermore, even if any member of the Class could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system.  Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Class and provide for judicial consistency.

52.     There is a well-defined community of interest in the questions of law and fact affecting the Class as a whole.  The questions of law and fact common to each of the Class predominate over any questions affecting solely individual members of the action.  Among the common questions of law and fact are:

a.     Whether Defendant is a "debt collector," as that term is defined under the

FDCPA;

b.   Whether Defendant's correspondence is a "communication" as that term is defined under the FDCPA;

c.   Whether Defendant's correspondence is an attempt to collect a debt;

d.   Whether Defendant's correspondence violated the FDCPA; and

e.   Whether Plaintiff and the members of the Class have sustained damages and, if so, the proper measure of damages.

53.   Plaintiffs' claims are typical of the claims of members of the Class.

54.   Plaintiff and members of the Class have sustained damages arising out the same wrongful and uniform practices of Defendant.

55.   Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance.

## COUNT I
## FDCPA
### (On Behalf of the Class)

56.   Plaintiff hereby incorporates all facts and allegations of this document by reference, as if fully set forth at length herein.

57.   Defendant is a "debt collector" as that term is defined under the FDCPA.

58.   An attempt to collect upon a debt incurred during the course of personal medical treatment falls within the scope of the FDCPA. See Pipiles v. Credit Bureau, Inc., 886 F.2d 22 (2nd Cir. 1989); Adams v. Law Offices of Stuckert & Yates, 926 F.Supp 521 (E.D.Pa. 1996).

59.   The actions of Defendant, as described above, violate the applicable provisions of the FDCPA as courts across the country have held that a violation of a state law constitutes a violation of the FDCPA. See, e.g., Kojetin v. CU Recovery, Inc., 212 F.3d 1318 (8th Cir.

9

2000)(finding that a percentage-based collection fee violated the FDCPA when state law prohibited such a fee); Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507 (9th Cir. 1994)(finding that a violation of state garnishment procedures was a violation of FDCPA); Flores v. Quick Collect, Inc., 2007 WL 433239 (D.Or. 2007)(finding that the use of illegal or improper state summons may constitute an "unfair or unconscionable means" to collect the debt under 15 U.S.C. § 1692f); Mejia v. Marauder Corp., 2007 WL 806486 (N.D.Cal. 2007)(holding that addition of extra interest to the underlying balance, which was above the state law limitation, was a violation of the FDCPA); Williams v. Edelman, 408 F.Supp.2d 1261 (S.D. Fl. 2005)(attempting to collect unauthorized fees or interest violated FDCPA); Van Westrienen v. Americontinental Collection Corp., 94 F.Supp.2d 1087 (D.Or. 2000)(finding that a consumer established a violation of FDCPA where the debt collector threatened seizure or garnishment within five days of notice to consumer, contrary to a state-mandated waiting period).

60.     Further, courts have also held that the FDCPA is violated when a defendant mischaracterizes the debt owed.  See, e.g., Stanley v. Stupar, Schuster & Cooper, S.C., 136 F. Supp. 2d 957 (E.D. Wis. 2001)(holding that a collector's description of the amount of the debt as "$987.71, plus attorneys fees" at the time when no attorneys' fees were owed violated the FDCPA).

61.     Defendant's violations with respect to its collection efforts, include but are not limited to, seeking payment of an amount in excess of what Defendant was allowed to collect, in violation of 15 U.S.C. § 1692f(1).

62.     As a result of Defendant's violations of the FDCPA, Plaintiff has suffered damages in an amount to be determined at trial.

### V.     CLAIM FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for:

    (a)    Designation of this action as a class action pursuant to Fed. R. Civ. P. 23;

    (b)    Designation of Plaintiff as representative of the Class;

    (c)    Designation of Plaintiff's counsel as class counsel for the Class;

    (d)    A Declaration that Defendant has violated the applicable provisions of the FDCPA;

    (e)    An Order enjoining Defendant from any further violations of the FDCPA;

    (f)    Actual damages;

    (g)    Statutory damages;

    (h)    Attorneys' fees and costs; and

    (i)    Such other relief as the Honorable Court shall deem just and appropriate.

## VI.   DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable.

**(SIGNATURE ON THE NEXT PAGE)**

11

Date: <u>January 15, 2018</u>

Respectfully submitted,
**KALIKHMAN & RAYZ, LLC**

Arkady "Eric" Rayz, Esquire
Demetri A. Braynin, Esquire
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone:  (215) 364-5030
Facsimile:  (215) 364-5029
E-mail: erayz@kalraylaw.com
E-mail: dbraynin@kalraylaw.com

**CONNOLLY WELLS & GRAY, LLP**
Gerald D. Wells, III, Esquire
Robert J. Gray, Esquire
2200 Renaissance Blvd., Suite 275
King of Prussia, PA 19406
Telephone: (610) 822-3702
Facsimile: (610) 822-3800
Email: gwells@cwglaw.com
Email: rgray@cwglaw.com

Counsel for Plaintiffs and the Proposed Class

# EXHIBIT "A"



# HRRG

Page 1 of 1

**MAIL RETURN ONLY**
PO BOX 8486 · CORAL SPRINGS FL 33075-8486

# 800-984-9115

en Español 800-398-3975

August 03, 2017

HERMINE BYFIELD

Re: ▇▇ Settlement Offer
hrrgcollections.com
PIN# ▇▇▇▇

Dear Hermine Byfield:

## AN OFFER FOR YOU

Our client has authorized us to offer you a settlement option in an effort to assist you in resolving your account balance. This offer is valid for 14 days from the date of this letter. If you need additional time to respond to this offer, or need to make other arrangements, please contact us. We are not obligated to renew this offer.

Settle your balance of $900.00 by making a one-time payment of $540.00 within 14 days of the date of this letter.

To make your payment, just fill in your credit card information on the reverse side of this notice, or enclose your check/money order payable to the creditor, along with the payment voucher below. To pay using our automated IVR, accessible 24 hours a day, call 855-PAY-HRRG (855-729-4774), or visit our website at hrrgcollections.com. Both options require the PIN# and the RE: # listed above along with the last four digits of your social security number.

This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. (NOTICE: SEE REVERSE FOR IMPORTANT INFORMATION).

(NOTICE: SEE REVERSE SIDE FOR APPLICABLE DISCLOSURES AND PAYMENT INFORMATION.)

✄ ✄

Reference #: ▇▇          Total Balance: $900.00          Amount Enclosed  $ _____

| Creditor | Account # | Regarding | Amt Owed | ServDate |
|---|---|---|---|---|
| EMERG CARE SERV OF PA. P. | ▇▇▇▇ | BYFIELD,HERMINE | 900.00 | 11/02/15 |

**PAYMENT VOUCHER**

PO BOX 5406
CINCINNATI OH 45273-7942

H300