# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HERMINE BYFIELD,<br><br>                    Plaintiff,<br><br>vs.<br><br>HEALTHCARE REVENUE RECOVERY GROUP, LLC,<br>et al.<br><br>                    Defendant(s). | CIVIL ACTION<br>NO. 2:18-cv-00243-PBT |

**HEALTHCARE REVENUE RECOVERY GROUP, LLC'S REPLY BRIEF[1]**

**I.    HRRG is Entitled to Summary Judgment Because Act 6 did not Apply to the "Provider's" Bill at the time HRRG's Aug. 3, 2017 Letter was Mailed to Plaintiff**

The key legal question the Court is being asked to resolve is whether HRRG's Aug. 3, 2017 letter seeking to collect the $900.00 medical bill on behalf of the "Provider" violated §1692f(1) of the FDCPA because <u>at the time it was mailed to Plaintiff</u>[2] the amount owed should have been reduced pursuant to Act 6 of the MVFRL. The Court may resolve this question on summary judgment as it is a purely legal issue and no genuine issues of material fact exist. Under the MVFRL, Act 6 does not apply "[i]f no portion of the provider's bill is *payable* under automobile insurance coverage," and "[a] provider may directly bill the insured or other insurance carrier as it has prior to passage of Act 6."[3] In <u>Patel v. Tepox-Vasquez</u>, this District Court explained that whether a bill is "payable" or "capable of being paid" under the MVFRL is determined by asking: "'[a]t the present point in time, is or will the insurer provide coverage for the benefit to the insured?' ***If the insurer has denied coverage, then the answer to that question is no and the***

---

[1] **HRRG respectfully requests oral argument on HRRG's Motion for Summary Judgment.**

[2] <u>See Baker v. Eric M. Berman, P.C</u>., 2009 U.S. Dist. LEXIS 97469, at *10 (W.D. Pa. Oct. 21, 2009) (recognizing in cases alleging a letter violated the FDCPA, "the event giving rise to the litigation is receipt of a letter sent by the collection agency to the plaintiff.").

[3] 31 Pa. Code §69.22(h).

*benefit cannot be considered payable.*"[4] In <u>Scott v. Erie Ins. Grp.</u>, 706 A.2d 357 (Pa. Super. 1998), the Superior Court applied the same definition of the term "payable" in rejecting appellant's argument that "payable" should mean that the bills "*could have been payable.*" <u>Id</u>. at 359.

Here, it is undisputed that prior to HRRG's Aug. 3, 2017 letter that the "Provider" had submitted the bill to Nationwide for payment, but it was never paid. <u>See</u> SUMF ¶¶ 33-35, 61-84. Nationwide paid the full limits of $5,000 in PIP medical benefits under Plaintiff's Policy as of Feb. 3, 2016;[5] and therefore, **<u>denied</u>** coverage for the $900.00 bill informing the "Provider" that "**[t]he benefits for this patient/claim are exhausted**." <u>Id.</u> at ¶¶ 70, 68-71. Nationwide continued to maintain the same position at the time of the mailing of HRRG's Aug. 3, 2017 letter;[6] after Plaintiff filed her lawsuit on Aug. 30, 2017;[7] and through the time of Plaintiff's settlement with Nationwide in January 2019. <u>Id</u>. at ¶¶ 144-49.

While Plaintiff contends that UM benefits under her Policy were "available" at the time of HRRG's Aug. 3, 2017 letter,[8] Nationwide denied that Plaintiff was entitled to UM benefits, an issue which Plaintiff litigated and lost at arbitration in June 2018. <u>See</u> SUMF ¶¶ 142-43. It was only after Plaintiff appealed that Nationwide agreed to pay any compensation to Plaintiff as part of a settlement to avoid further litigation. <u>Id</u>. at ¶¶ 142-43, 144-149. Under <u>Patel</u> and <u>Scott</u>, whether the bill "could have been payable" by Nationwide "is not the standard" under the Act, and "***does not equate to 'payable' since it involves an alteration of what in fact occurred***," as it is

---

[4] *Patel v. Tepox-Vasquez*, 2015 U.S. Dist. LEXIS 101507, at *6-7 (E.D. Pa. Aug. 3, 2015) (citing <u>Scott v. Erie Ins. Grp.</u>, 706 A.2d 357, 359 (Pa. Super. 1998); <u>Eberhart v. Zemko,</u> No. 03-01, 2004 WL 5868018 (Pa. C.C.P. Lycoming Cnt'y June 15, 2004)).

[5] <u>Id.</u> at ¶¶ 35, 67-68.

[6] <u>See</u> SUMF ¶¶ 69, 74, ¶¶ 135, 136-37.

[7] <u>See</u> HRRG's MOL at pp. 7-8, 13-14; SUMF ¶¶ 132-38, 139.

[8] <u>See</u> ECF 64 at p. 7.

{PH802929.1}                                  2

"undeniable" that Nationwide denied coverage because "benefits" were "exhausted" and did not pay the bill. *Id*. at 359-360. Therefore, as a matter of law, Plaintiff cannot establish that HRRG violated the MVFRL and/or §1692f(1) of the FDCPA.

## II.   Plaintiff's Arguments that Act 6 Applied Because UM Benefits Were "Available" under Plaintiff's Nationwide Policy are Unavailing

Plaintiff contends in error that *Patel* and *Scott* have nothing to do with this case. ECF 64 at 14. *Patel* and *Scott* addressed the same "payable" language used under §1722 of the MVFRL. The same rationale for the test under *Patel* and *Scott* applies equally to §1797(a). Section 1722 of the MVFRL precludes a plaintiff in an action against a tortfeasor in an auto accident case "from recovering the amount of benefits *paid or payable*" under subchapters §§1711-1725 (motor vehicle liability insurance first party benefits), workers' compensation, or any other benefits as defined in §1719 (medical insurance benefits). *Patel*, *supra*, at *5-6. Like Act 6, the purpose of §1722 is, in part, to reduce auto insurance premiums. *Id.* at *6-7. If the medical bill is "payable" under motor vehicle liability insurance first party benefits, then plaintiff cannot seek to recover those benefits against the other tortfeasor driver. *See id*. A plaintiff establishes that medical bills fall outside of §1722 "when they have been submitted to an insurance carrier and rejected." *Id.* at *7-8. Hence, whether a bill is "payable" under §1722 presents a nearly identical situation as here.

The *Patel* and *Scott* decisions are also not alone. In *Kansky v. Showman,* 2011 U.S. Dist. LEXIS 38814, at *16 (M.D. Pa. Apr. 11, 2011), the court interpreted "payable" ***in the context of Act 6*** as meaning "***owed, to be paid, due.***" Rejecting the argument that future medical payments would be paid by the auto insurer under Act 6, the *Kansky* court explained there was no "guarantee that any future expenses will in fact be paid. ***It is merely speculation.*** For instance, plaintiff's insurer could become bankrupt, or deny future medical bills for a variety of reasons … Because

{PH802929.1}                                                    3

the insurance benefits are not necessarily *due and owing **at this time*** … plaintiff's future medical bills are not 'payable' under Act 6." *Id*. at *16. The same speculation would be required here.

Plaintiff has offered no authority to support applying a different test. Plaintiff cites, *Schroeder v. Schrader*, 682 A.2d 1305 (Pa. Super. 1996), but that case is distinguishable. *See* ECF No. 64 at 14. The issue in *Schroeder* was whether §1722 was correctly applied to reduce the jury's verdict award for past and future lost earnings based on workers' compensation benefits that were awarded to the plaintiff. *Id*. at 1305-06. Plaintiff argued, *inter alia*, that there was insufficient evidence that she would, in fact, receive workers' compensation benefits. *Id*. at 1309-10. The *Schroeder* court rejected that argument concluding §1722 precluded recovery of benefits "paid or *payable*" under workers' compensation, which the appellate court interpreted as including "a claimant's entitlement to future payments [for workers' compensation benefits], until such time as the payments are modified or terminated." *Id*. Plaintiff's partial quotation of this single sentence from *Schroeder* is misleading and taken out of context.

Plaintiff further contends that it is "irrelevant" that Nationwide did not find UM coverage was triggered at the time of HRRG's Aug. 3, 2017 letter and argues that UM coverage under the Policy should have applied as of the date that Plaintiff suffered her injuries the date of the accident on Nov. 2, 2015. *See* ECF 64 at 14. Plaintiff also argues erroneously that the Provider has a statutory responsibility to determine whether Act 6 applies by partially quoting §1797(a). *Id*. at 13-14. Plaintiff ignores the Act's enabling Regulations, which must be read in conjunction with the Act.[9] The Act's Regulations state, under 31 Pa. Code § 69.22(a): "***[a]n insurer shall apply the Medicare payment limitations of Act 6*** to provider services covered by bodily injury liability,

---

[9] *See Burstein v. Prudential Prop. & Cas. Ins. Co.*, 809 A.2d 204, 208 (Pa. 2002); *see also*, 75 Pa.C.S.A. § 1704(b); 31 Pa. Code § 69.1.

*uninsured and underinsured motorists*, first-party medical and extraordinary medical benefits coverages under an automobile insurance policy." Under § 69.22(c), "[i]f an insured's first-party limits have been exhausted, *the <u>insurer</u> shall*, within 30 days of the receipt of the provider's bill, provide notice to the provider and the insured that the first-party limits have been exhausted." Finally, under § 69.22(d), "[u]pon receipt of a provider's bill, *the <u>insurer</u> shall make a determination of the appropriate Medicare payment and pay up to the first-party benefit limits of the policy*. If the determined amount exceeds the benefit limits of the policy, or the determined amount plus previously paid benefits exceed the benefit limits of the policy, *<u>the provider may directly bill the insured or a secondary insurance carrier</u>*." Hence, it is the *insurer's* responsibility (Nationwide) to determine if Act 6 applies and the amount of the appropriate Medicare payment, and <u>not</u> the Provider's responsibility.

This interpretation is also supported by the record. Nationwide's PIP log shows Plaintiff's medical "Providers" all submitted the full amount of the charges that they were seeking reimbursement for from Nationwide, and then Nationwide determined the amount to be reimbursed under Act 6. SUMF ¶ 51; *see also*, PIP Log (Ex. L). Nationwide's PIP adjuster, Ms. Glasgow, further testified that in her 15-years' experience that Nationwide *<u>always</u>* applied Act 6, and that she had never seen a "Provider" apply the Act 6 reduction. *<u>See</u>* SUMF ¶¶ 58-59. Plaintiff has adduced no evidence to the contrary.

Moreover, Plaintiff's arguments that UM coverage should have been triggered under Nationwide's Policy as of the date of Plaintiff's accident contradicts the plain language of the Policy.[10] It is also inconsistent with Nationwide's interpretation, who was again responsible for determining if Act 6 applied. *See* SUMF ¶ 135. The Policy language plainly states that before there

---

[10] *<u>See</u>* SUMF ¶ 40; *<u>see also</u>*, Nationwide Policy (Ex. J), at pp. 13-17.

{PH802929.1}                                              5

will be any recovery for "UM benefits" that Nationwide and the insured must agree on two points: "[a] whether there is a legal right to recover damages from the owner or driver of an **uninsured motor vehicle**; and if so, b) the amount of such damages." *Id.* at ¶ 40. By definition, an "uninsured motor vehicle " is "one for which there is no bodily injury liability bond or insurance at the time of the accident…," and does not include, "a **motor vehicle** for which there is liability insurance or self-insurance applicable at the time of the accident…." *Id*. Nationwide's UM Adjuster, Ms. Lanes, testified that Nationwide did not consider UM benefits under the Policy triggered until after it had determined the other at fault driver had no auto insurance available. *See* SUMF ¶¶ 135-136.

In any event, Plaintiff's arguments regarding whether UM should have applied under the terms of her Policy is merely another way of arguing the bill "*could have been payable*," which *Patel*, *Scott* and *Kansky*, *supra*, all rejected as not the test for determining if a bill is "payable" under the MVFRL. Moreover, the "Provider" was entitled to rely upon Nationwide's determination whether the bill is "payable" under its Policy, and by extension, if Act 6 applied under the MVFRL. It would be impossible for the "Provider" to make a legal determination whether Plaintiff should be entitled to other auto insurance benefits under her Policy. Nor would it be reasonable for a "Provider" to be expected to do so after Nationwide had denied coverage.

### III. This Court in *Goldshteyn v. Healthcare Revenue Group, Inc.* did not Rule on any Issues Being Raised by HRRG on Summary Judgment

Plaintiff contention that the issues raised by HRRG regarding Act 6's applicability were resolved by this Court in *Goldshteyn v. Healthcare Revenue Group, Inc.*, Civil Action No. 2:16-cv-05049-PBT (E.D. of Pa. Sept. 21, 2016), is patently false.[11] *See* ECF No. 64 at 1. In *Goldshteyn*, this Court ruled upon HRRG's Motion for Judgment on the Pleadings, not summary judgment. *See*

---

[11] A copy of this Court's Memorandum Opinion, dated Nov. 27, 2017, is attached as Exhibit "A."

{PH802929.1}                        6

Ex. A, at *1. In denying HRRG's Motion, this Court stated that whether HRRG's reliance on the "Provider's" calculation of the amount of the debt in that case was reasonable was "a factual determination that must be made after the fact finder [] had an opportunity to consider all of the relevant factors." *Id.* at *4. The Court further ruled, as to the *bona fide error* defense, that HRRG had failed to cite any procedures that it had in place to avoid collecting more than was permitted under the MVFRL. *Id.* at *4-5. The merits of the case were never reached because Plaintiff accepted an offer of judgment.[12]

### IV. **Plaintiff's Recitation of the Facts and Arguments are not Supported by the Record**

Plaintiff in several instances does not offer reasonable inferences based on facts of record, but simply makes up facts out of whole cloth. Plaintiff says:

- "During the State Lawsuit, Plaintiff notified Nationwide of the Provider's outstanding bill of $900.00." *Plaintiff in support cites a Settlement Memorandum filed in the state action on **Dec. 28, 2018** as Exhibit "1" to her Opposition.* (ECF No. 64 at 2.).

- "In January of 2019, Nationwide paid $13,000 in 'uninsured benefits' for the injuries sustained on November 2, 2015." (*Id.*)

- "The settlement took into account the unpaid medical bills related to Plaintiff's treatment, after they were adjusted downward in accordance with the MVFRL." (*Id.*)

Plaintiff also argues based on her misleading version of the facts that:

- "The fact that it took Nationwide additional time to determine the amount of Plaintiff's compensation is irrelevant. Indeed, Nationwide would have never agreed to pay Plaintiff unless in November of 2015 she suffered an 'injury covered' by Nationwide's Policy." (*Id.* at 13.).

Plaintiff wholly mischaracterizes the events leading up to the filing of her state court lawsuit against Nationwide and the eventual settlement of her claims in January 2019. Before filing

---

[12] An offer of judgment is not an admission liability and does not decide the legal issues at dispute in a case. <u>Jolly v. Coughlin</u>, 1999 U.S. Dist. LEXIS 349, *29 (S.D.N.Y. Jan. 14, 1999).

{PH802929.1}           7

her state court lawsuit on Aug. 30, 2017, Plaintiff never made a claim for UM benefits under her Policy. *See* SUMF ¶¶ 49, 131. After she filed her lawsuit, Nationwide ***denied*** that it had failed to pay UM benefits to Plaintiff due under her Policy and argued her claims were barred by the terms of the Policy.[13] *Id.* at ¶¶ 132-133. The matter was fully litigated and Plaintiff's claims against Nationwide were dismissed at arbitration in June 2018. *Id.* at ¶¶ 141-143. It was only after Plaintiff appealed that Nationwide agreed to resolve Plaintiff's claims by way of a settlement. *Id.* at ¶¶ 144, 146. The General Release, executed on January 24, 2019, provided that Plaintiff would receive $13,000 as consideration for the settlement. *Id.* at ¶¶ 147-48. The General Release further stated:

> It is acknowledged that the payment of this consideration is made as a settlement of a disputed claim and to avoid the further costs and risks of protracted and uncertain litigation, and ***is not an admission of liability on the part of any and all defendants listed above herein, it being understood that each defendant denies such liability.***

*Id.* at ¶¶ 146-149; *see also*, General Release (Ex. W) at p. 1. This clearly evidences a compromise of a disputed claim by the parties, especially given that Plaintiff accepted less than the full $15,000 UM coverage limits under her Policy. Hence, Nationwide did not deny Plaintiff's allegations merely because it needed "additional time to determine the amount of Plaintiff's compensation." ECF No. 64 at 2. Nor was Nationwide's decision to pay Plaintiff a settlement to resolve the lawsuit evidence that it determined she was entitled to UM benefits. And even if Nationwide had reached such a determination, it was not reached until January 2019, *nearly 1-year and 5-months* after the mailing of HRRG's Aug. 3, 2017 letter.

---

[13] As previously explained, Nationwide's UM adjuster testified that Nationwide did not pay UM benefits to Plaintiff at that time because it took the position that Plaintiff's UM coverage was only triggered if the other driver was determined to be "at fault" and had no other insurance available, which Nationwide never determined. *Id* at ¶¶ 135, 138; *see also*, Lanes Dep. (Ex. C) at 34:4-18; 18:8-12. Nationwide also investigated whether the rental car company that owned the vehicle involved in the accident had other available auto insurance, but that carrier later denied coverage. *Id* at ¶ 139; *see also*, Lanes Dep. (Ex. C) at 34:4-18.

Moreover, there is no evidence to support Plaintiff's contention that the settlement in January 2019 "took into account" the medical bill for $900. Nor is there any evidence that Nationwide adjusted the bill in accordance with Act 6.[14] *Id*. To the contrary, Nationwide's UM adjuster, Ms. Lanes, testified that she had no record of ever receiving the $900.00 bill. Nor did she have any record that Plaintiff or her counsel asked for Nationwide to pay the bill under UM benefits. SUMF ¶ 156; *see also*, Lanes Dep. (Ex. C) at 24:16-25:3.[15] It is undisputed that Nationwide also never paid the $900 bill. SUMF ¶ 80. Nor did Nationwide apply an Act 6 reduction to the bill at any time. *See id*. at ¶¶ 70-77.

Finally, the "Settlement Memorandum" attached to Plaintiff's Opposition was never produced in discovery and should not be considered. *See* Fed. R. Civ. P. 37(c)(1); *Locke v. Jefferson Hills Manor*, 2020 U.S. Dist. LEXIS 163263, *6 (W.D. Pa. Sept. 8, 2020). HRRG has suffered harm as a result because it was denied the opportunity to depose Nationwide's representatives to determine whether they had any knowledge of this document or its contents. Plaintiff's counsel also never questioned Nationwide's representatives regarding the Settlement

---

[14] Ms. Lanes' testimony cited by Plaintiff does not support this contention. She testified:
> Q. Had you *ever* negotiated a settlement of a UM claim where you calculated the amount that was owed for the bill under Act 6 in determining the amount to pay for the settlement?
> A. Yes.

*Id.* at 58:20-25 (emphasis added).

[15] Ms. Lanes testified as follows:
> Q. [] Do you know whether Ms. Byfield or her counsel ever asked for Nationwide to pay this bill for $900 … under Ms. Byfield's UM or UIM coverage?
> A. I did not see this bill in our UM file.
> ….
> Q. Would you expect to have seen this bill if somebody had submitted it to Nationwide to be paid?
> A. Yes.

*Id*. at 24:16-25:3.

Memorandum; thus, it does not establish any factual dispute that is genuine or material. Indeed, whether Nationwide knew or should have been aware of the $900.00 bill at the time of the settlement in January 2019 is irrelevant.

### V.     The Case Law Cited by Plaintiff is Distinguishable

Plaintiff relies heavily on *Pittsburgh Neurosurgery Assocs. v. Danner*, 733 A.2d 1279 (Pa. Super. 1999), in opposing summary judgment. As explained in HRRG's initial Brief, *Danner* is distinguishable in multiple respects and fails to support Plaintiff's theory of liability. *See* ECF 57-2 at 16-20. Plaintiff also relies upon *Olson v. North American Industry Supply*, 658 A.2d 358 (Pa. Super. 1995), in arguing that the Consent for Hospital Treatment and Services form she signed is not evidence of an agreement that she would pay "usual and customary charges" for her treatment. ECF No. 64, at 8-9. The *Olson* case involved an agreement to purchase stocks of a corporation. *Olson*, 658 A.2d at 603. Nothing in *Olson* says a hospital must require a patient to sign an agreement that specifically sets forth all possible charges for their treatment. *Id*. Such a notion is nonsensical. Plaintiff also relies upon *Hylton v. AmeriFinancial Sols., LLC*, 2018 U.S. Dist. LEXIS 196571 (E.D. Pa. Nov. 19, 2018), in arguing that HRRG should not be entitled to summary judgment. ECF 64 at 17. HRRG also addressed *Hylton* in its initial Brief. *See* ECF 57-2 at 22-23. Multiple other courts have held that the FDCPA does not impose a duty to investigate the validity of a debt upon a debt collector. *See id*.

### VI.    Conclusion

Defendant, Healthcare Revenue Recovery Group, LLC, respectfully requests that summary judgment be granted in HRRG's favor and that Plaintiff's claims be dismissed, with prejudice.

        Respectfully submitted,

        **MARKS, O'NEILL, O'BRIEN,**
        **DOHERTY & KELLY, P.C.**

        */s/ Cecil J. Jones, Esquire*
        Cecil J. Jones, Esquire
        Attorney for Defendant,
        Healthcare Revenue Recovery Group, LLC

Date:  February 25, 2022

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARISA GOLDSHTEYN, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 16-5049 |
| HEALTHCARE REVENUE RECOVERY : | |
| GROUP, LLC, : | |
| : | |
| Defendant. : | |

## ORDER

**AND NOW**, this __27th_____ day of November, 2017, upon consideration of Defendant's Motion for Judgment on the Pleadings (Doc. 14) and Plaintiff's Response in Opposition thereto (Doc. 15), **IT IS HEREBY ORDERED AND DECREED** that Defendant's Motion is **DENIED**.[1]

BY THE COURT:

/s/ Petrese B. Tucker
_____
**Hon. Petrese B. Tucker, U.S.D.J.**

---

[1] Before the Court is Defendant Healthcare Revenue Recovery Group, LLC's ("Defendant") Motion for Judgment on the Pleadings. For the reasons set forth below, Defendant's Motion is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Since the Court is writing primarily for the Parties, who are familiar with this case, the Court need not set forth the factual or procedural background except insofar as they may be helpful to the Court's brief discussion.

1

On June 2, 2015, Plaintiff Larisa Goldshteyn ("Plaintiff") suffered various injuries as a result of a car accident. Following the accident, Plaintiff was transported to Nazareth Hospital for treatment. In a letter dated September 6, 2016, Defendant indicated that it had been hired by Emergency Care Services of PA, P.C. ("Emergency Care") to collect an outstanding balance of $1,204.00 for physician services provided to Plaintiff on the day of the accident.

On September 21, 2016, Plaintiff filed the present action alleging that Defendant's letter violated § 1692(f)(1) of the Fair Debt Collection Practices Act ("FDCPA") because Pennsylvania law prohibited Defendant from collecting the total outstanding balance of $1,204.00. Defendant maintains that the FDCPA does not require debt collectors to conduct an independent investigation into the validity of the underlying debt prior to commencing collection activities. Defendant also argues that since it reasonably relied on Emergency Care's calculation of the amount of the debt, Defendant cannot be held liable for any errors that may have been made by Emergency Care as to the balance owed.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Rule 12(c) motions based on the theory that the plaintiff failed to state a claim are reviewed under the same standard as motions to dismiss pursuant to Rule 12(b)(6). *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 146–47 (3d Cir. 2013). Under Rule 12(b)(6), the court evaluates the well-plead factual allegations of the complaint, accepts their veracity, and determines whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint is plausible on its face when its factual allegations allow a court to draw a reasonable inference that a defendant is liable for the harm alleged. *Santiago v. Warminster Twp.*, 629 F.3d

2

121, 128 (3d Cir. 2010). In evaluating well-pled factual allegations, the court is to construe the complaint in the light most favorable to the plaintiff. *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 74 (3d Cir. 2011).

### III. DISCUSSION

Defendant's Motion is denied because the amount that Defendant attempted to collect was not authorized by an agreement or permitted by law. Under § 1692(f)(1) of the FDCPA, a debt collector may not collect any amount from a consumer unless that amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692(f)(1). The Parties do not dispute that Plaintiff is a consumer and Defendant is a debt collector as defined by the FDCPA. In the present case, the alleged debt is not the result of any agreement between the Parties. Thus, to avoid liability under § 1692(f)(1), the amount requested by Defendant must be permitted by law. Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL") limits the extent of liability for the cost of treatment received for an injury incurred in a motor vehicle accident. 75 PA. CONS. STAT. § 1701 *et seq.* Under the MVFRL, "if Medicare makes any payment for a particular service, then reimbursement for purposes of automobile insurance will be limited to 110% of that amount." *Hosp. Assoc. of Pennsylvania, Inc. v. Foster*, 629 A.2d 1055, 1057–58 (Pa. Commw. Ct. 1993). Therefore, healthcare providers, or their representatives, may not request payment of any amount without applying the reduction provided in the cost containment provision of the MVFRL. Plaintiff alleges that Defendant, acting on behalf of Emergency Care, failed to apply the reduction and instead requested the full cost of the treatment provided to Plaintiff. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has stated a claim upon which relief may be granted under § 1692(f)(1).

Defendant maintains that it is entitled to judgment on the pleadings because it was unaware of the fact that the amount it was attempting to collect was unauthorized under the MVFRL. Defendant also argues that it cannot be held liable because any miscalculation of the debt was done by Emergency Care and Defendant is "permitted to reasonably rely on the information provided by Emergency Care Services of PA, P.C." (Def.'s Mot. J. Pleadings ¶ 15, Doc. 14.) The Court disagrees. First, whether Defendant's reliance on Emergency Care's representation as to the validity of the debt was reasonable is a factual determination that must be made after the fact finder has had an opportunity to consider all of the relevant factors. Second, "the FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation." *Allen v. LaSalle Bank*, 629 F.3d 364, 368 (3d Cir. 2011). Under § 1692(f)(1), the only inquiry is whether the amount a defendant attempted to collect was expressly authorized by the agreement creating the debt or permitted by law. *Id.* Plaintiff has alleged that Defendant sought to collect money owed for medical services following an automobile accident without making the cost reduction required by the MVFRL. Thus, Defendant is not entitled to judgment on the pleadings because these allegations establish that Defendant attempted to collect an amount that was not authorized by an agreement and directly violated state law—a violation of § 1692(f)(1). *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 407 (3d Cir. 2000) (finding that fees charged violated § 1692(f)(1) as they were in direct violation of a state statute).

Defendant argues that "a misrepresentation made by a debt collector solely as a result of inaccurate information provided by a creditor qualifies as a bona fide error under 15 U.S.C. § 1692k(c)." (Def.'s Mot. J. Pleadings 6, Doc. 14.) "A debt collector can escape liability under the FDCPA by proving that its statutory violation was not intentional and resulted from a bona fide

4

error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 393 (3d Cir. 2017) (internal quotations omitted). To invoke this defense, the defendant must establish: (1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors. *Glover v. FDIC*, 698 F.3d 139, 149 (3d Cir. 2012) (citing *Beck v. Maximus*, *Inc.*, 457 F.3d 291, 297–98 (3d Cir. 2006). Although Defendant suggests that the bona fide error defense entitles it to judgment on the pleadings, Defendant makes no effort to establish the elements of the defense. Specifically, Defendant has not mentioned a single procedure it has in place that is designed to avoid collecting more than what is permitted under the MVFRL. Therefore, on this record, the Court cannot conclude that Defendant has established the elements of the bona fide error defense. Accordingly, Defendant's Motion for Judgment on the Pleadings is denied.